**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| **BRAD JONES, MELISSA CANNON, DESIREE RADCLIFF, DARLENE PORTER And PATRICIA "SHELLY" SCALF, individually, and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v**<br><br>**BLUE SKY CASINO, LLC d/b/a FRENCH LICK RESORT & CASINO,**<br>**Defendant.** | **Case No.** 26-cv-105<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Brad Jones ("Jones"), Melissa Cannon ("Melissa"), Desiree Radcliff ("Radcliff"), and Darlene Porter ("Porter") and Patricia "Shelly" Scalf ("Scalf") and all together, "Plaintiffs") individually, and on behalf of all others similarly situated, bring this Class Action Complaint against Blue Sky Casino, LLC d/b/a French Lick Resort & Casino ("Blue Sky" or "Defendant"), and hereby state and allege as follows:

**INTRODUCTION**

1. Plaintiffs and all other similarly situated employees work or worked for Defendant, a casino and hotel resort located in French Lick, Indiana.

2. Plaintiffs allege that Defendant violated the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act, 29. U.S.C. § 2615 ("FMLA") on two separate theories. Plaintiffs also bring these claims under the Indiana Civil Rights Law ("ICRL"). First, as described further below, Defendant discriminated, and continues to discriminate, against its workers with disabilities by systematically interfering with their statutory rights to engage in the

interactive process, maintain reasonable accommodations, and exercise their FMLA protective leaves. Specifically, Defendants create and maintain a toxic work environment where they harass their workers with qualified disabilities and/or those who are entitled to FMLA leave by broadcasting their personal and identifiable medical information to supervisors, subordinates and even patrons in an attempt to humiliate them on an ongoing basis, and they retaliate against the workers with disabilities/FMLA by subjecting them to disproportionately worse working conditions (compared to non-disabled/non-FMLA workers) and adverse actions, up to and including termination.

3. Plaintiffs bring these ADA discrimination and retaliation claims as well as their and FMLA interference and retaliation claims on behalf of themselves and similarly situated Blue Sky employees who may choose to opt in to this action pursuant to Fed. R. Civ. P. R. 23.

**JURISDICTION AND VENUE**

4. Federal question jurisdiction over the Plaintiffs' and all others similarly situated ADA and FMLA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. Supplemental jurisdiction over Plaintiffs' and all others similarly situated state law claims is based on 28 U.S.C. § 1367, in that the state law claims are so related to the ADA and the FMLA claims that they form part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

7. Brad Jones is forty-two (42) years old and is a resident of Marengo, Indiana (Crawford County). Defendant currently employs Jones as a Table Games Dealer. Jones has been

an employee of Defendant's for over 3 years. Jones had been on a leave of absence for mental health related conditions that stemmed from his employment with Blue Sky since May 2025. Jones believes Blue Sky discriminated and retaliated against him for his age[1], disability and FMLA status.

8. Melissa Cannon is fifty-four (54) years old and is a resident of Celestine, Indiana (Dubois County). At the time of the events identified throughout this complaint, Melissa was a resident of Paoli, Orange County, Indiana. From approximately 2006 through August 2, 2024, Defendant previously employed Melissa at its casino property, until Defendant terminated Melissa for discriminatory reasons related to her age[2], disability and FMLA status. During her employment, Melissa worked both day and night shifts as a Table Games Dealer, and a Table Games Supervisor.

9. Darlene Porter is thirty-six (36) years old and is a resident of West Baden Springs, Indiana (Orange County). Defendant currently employs Porter as a Table Games Dealer and a Table Games Supervisor. Porter has been an employee of Defendant's since 2015. Porter works primarily day shifts. Porter's applied for and was granted intermittent FMLA in late winter/early Spring 2026[3].

10. Desiree Radcliff is sixty-three (63) years old and is a resident of Paoli, Indiana. She worked for Defendant from approximately December 2016 until December 2024 as Food and Beverage Supervisor, when she was terminated for reasons related to her age[4], disability, and FMLA entitlement.

---

1 Jones is a named plaintiff seeking relief for his age discrimination related claims in *Rollie Cannon, Melissa Cannon, Brad Jones, Jerry Goolsby, Darlene Porter, and Jessica Arthur, individually and behalf of all other similarly situated v. Blue Sky Casino, LLC*¸4:25-cv-00013-TWP-KMB which remains pending and undetermined.

2 Like Jones, Cannon is a named Plaintiff in 4:25-cv-00013-TWP-KMB.

3 Like Jones and Cannon, Porter is a named Plaintiff in 4:25-cv-00013-TWP-KMB however she only joins that action to recover on wage and issue violations, not any claims based on her disability or FMLA entitlement.

4 Radcliff is an opt-in Plaintiff in 4:25-cv-00013-TWP-KMB and she was deposed on her age claims.

11. Patricia "Shelly" Scalf is fifty-four (54) years old and is a resident of Bedford, Indiana. She worked for Defendant as a Table Games Dealer and a Table Games Supervisor from October 9, 2006 until September 20, 2024, when she was terminated for reasons related to age[5] and disability discrimination, as well as her FMLA entitlement.

12. Defendant is a limited liability company organized under the laws of the State of Indiana. Defendant is registered to do business and does conduct business in the State of Indiana. Specifically, Defendant operates a 3,200-acre property located in French Lick, Orange County, Indiana, which consists of a casino and sportsbook, multiple hotels, more than a dozen restaurants, three golf courses, two spas and a 2,500-seat concert hall.

13. At all relevant times, Defendant employed Plaintiffs, and all other similarly situated employees.

14. At all times relevant to this action, Defendant acted by and through its agents, servants, and employees, each of whom always acted relevant herein in the course and scope of their employment with and for Defendant.

15. At all relevant times Defendant was and is an "employer" as defined by the FMLA, the ADA and the ICRL.

16. Plaintiffs and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendant within the respective limitations periods.

17. Defendant's registered agent is Corporation Service Company and Defendant may be served at 135 N. Pennsylvania St., Ste. 1610, Indianapolis, Marion County, Indiana 46204.

## FACTS COMMON TO ALL COUNTS

18. Plaintiffs re-allege the allegations set forth above.

---

5 Scalf is an opt-in Plaintiff in 4:25-cv-00013-TWP-KMB.

19. Defendant is a casino-resort which employs more than 500 hourly, non-exempt workers at its premises in French Lick, Indiana.

20. The hourly, non-exempt employees—including Plaintiffs—which make up the classes and collectives in this complaint work in the casino as Table Games Dealers, Table Games Supervisors, Slot Attendants, "Cage" (aka cash out) Attendants, and Food Service workers, as well as throughout the remainder of the hotel resort.

21. All of the Table Game Dealers, Slot Attendants, Cage Attendants, Food & Beverage Service workers, and certain other hotel resort employees are hourly, non-exempt, tipped employees.

22. Table Games Supervisors and certain other employees are hourly, non-exempt employees.

23. Defendant maintains a disciplinary policy for all hourly, non-exempt employees, including Plaintiffs, who fail to timely clock in or clock out of their work shifts.

24. If an employee receives too many "discipline points" for violating Defendant's time-clock policy, the employee, including Plaintiffs, are and were subject to a step-up disciplinary scheme that may ultimately conclude in termination.

25. Additionally, Defendant has a policy and practice of targeting older workers[6] and workers with disabilities and/or entitled to FMLA leave to discipline them more harshly, up to and including termination, than it does its younger workers, creating an inference of disability discrimination and FMLA interference.

---

[6] Plaintiffs age claims are addressed in *Cannon et. al v. Blue Sky* at 4:25-cv-00013, as discussed above.

26. Melissa will testify that she heard her former supervisor say verbatim that "you're all being targeted"[7] and that he was told to "keep track of anyone who had 'time in' [because] you all have been there too long."

27. Defendant terminated Cannon on August 2, 2024, due to their age, in violation of the ADEA and the ICRL. Melissa also believes the termination was tied to her entitlement to intermittent FMLA leave.

28. Defendant terminated at least three (3) individuals over the age of forty (40), *in addition Cannon*, for pretextual reasons disguised as age discrimination within mere days of their termination.

29. These individuals include Radcliff and Scalf.

30. Jones has been on a leave-of-absence relating to mental health issues caused by the constant harassment he faced at Blue Sky since May 2025.

31. Jones reported this harassment and misconduct to Blue Sky's HR personnel on more than one occasion.

32. Blue Sky terminated Jones on or about April 10, 2026. Blue Sky's termination was based solely on retaliation and discrimination, as discussed more below.

**FACTS RELATING TO EACH PLAINTIFF**

33. All of the Plaintiffs report a culture of incessant humiliation and cruelty in Defendant's workplace.

34. All of the Plaintiffs are long time employees, most have been employed by Defendant in the casino since it opened around 2006.

---

[7] Meaning older workers.

35. All of the Plaintiffs report they've been subject to jokes, humiliation, pranks, and general disrespect both among coworkers and in front of patrons since they've been entitled to FMLA leave due to their age[8] and disabilities.

36. All of the Plaintiffs report witnessing instances of jokes, humiliation, pranks and general disrespect to other workers, not including themselves.

**A. Jones**

37. Jones is a named plaintiff in *Cannon v. Blue Sky*, 4:25-cv-00013-TWP-KMB.

38. Defendant deposed him on October 27, 2025.

39. Jones reported being subject to severe harassment and humiliation at his deposition. He related the discrimination he faced to his age, disability and FMLA entitlement status.

40. Jones is a qualified employee with a disability.

41. He's been diagnosed with multiple ailments, including age-related lower extremity pain, tendinitis, diabetes, and certain mental health disorders.

42. He reports that despite working for Blue Sky for over 18 years that he has become disposable to them because of his disabilities and FMLA entitlements.

43. Jones reports that he requested intermittent FMLA leave in May 2025 and was told by Casino director, Mike Miller, that "the way [he] was using my intermittent FMLA was not working for them" anymore and that he'd no longer be entitled to certain days off.

44. Mike Miller threatened him that if he did not stop applying for and taking intermittent FMLA that they would change his employment status, prohibiting his entitlement to employee benefits despite having the same schedule for over 15 years.

---

[8] Again, age is not a claim brought in this suit. It is referenced as its relevant for the entire context of a toxic work environment as a whole, but plaintiffs seek recovery for age-related issues in *Cannon et. al v. Blue Sky* at 4:25-cv-00013, as discussed above.

45. Mike Miller then, without justification, told Jones he had 2 weeks to change his mind about his intermittent FMLA requests, or there would be consequences.

46. When Jones didn't change his mind, Miller required him to report to HR. Jones learned Miller and HR decided that it was "time for him to do something else" and demanded he go on an extended medical leave.

47. Jones has been on medical leave since May 2025.

48. He attempted to return to work in February, March and April 2026, to no avail.

49. Blue Sky terminated him on April 10, 2026, despite being a qualified employee, and asking to return to work.

50. Blue Sky never engaged in the interactive process with him from May 2025 to his termination in April 2026.

51. Blue Sky admitted that it had not contacted Jones to discuss his termination as of April 15, 2026.

52. Jones only learned of his termination from a friend, who herself learned of the termination through a current employee, who read about the termination on Blue Sky's intranet that **publicly posts individuals who have been terminated**.

53. In other words, Blue Sky never contacted Jones to tell him he was terminated.

54. Instead, it ghosted him even after he tried for months to return to work.

55. Jones believes he was terminated for participating in *Cannon v. Blue Sky*, 4:25-cv-00013 litigation, for filing a Charge of discrimination, and for asking to use his statutory FMLA leave benefits.

56. This is not the only issue Jones has had with FMLA interference, discrimination and retaliation.

57. He testified in his deposition for *Cannon v. Blue Sky*, 4:25-cv-00013 litigation that his supervisors have often subjected him and other workers to cruel harassment and jokes regarding his FMLA entitlements.

58. He testified about one instance where a <u>patron of the casino</u> approached him to inquire on why he had been missing from work, because one of his supervisors informed the patron that Jones had been on FMLA leave for medical reasons.

59. Despite the patron's likely good intentions, there is absolutely no justifiable reason why a random member of the public would have or should have known that Jones qualified for and had to take protected time off.

60. He also reports that coworkers would constantly question him about his medical conditions and need for time off.

61. Jones reports that non-disabled and non-FMLA employees are treated better than he.

62. Specifically, he notes that these individuals (who are usually younger than 40 years old) are not harassed, humiliated, called out or disregarded in the same way he has been and others, like the Plaintiffs, have been.

63. He reports that non-disabled, non-FMLA employees are not questioned why they need time off when they ask and are not subject to increased scrutiny in the workplace.

64. Jones believes the disparate treatment he faces is related to his age, ADA and FMLA status.

**B. Cannon**

65. Cannon reported being subject to ongoing harassment and mistreatment because of her disability and FMLA entitlement while employed by Defendant.

66. As a Dealer she was subject to pre-shift meetings before taking the casino floor.

67. On days she would report to work and attend these meetings, and during work on the floor, she reports that her supervisors and coworkers often made comments to her like "Oh, I need to get me some FMLA" or "You think they'd give me FMLA". (Cannon Dep. p. 45).

68. Cannon also testified that others would "guilt" her for using her FMLA. They would make comments like, "Well, I have FMLA, and I never use it. But you use it all the time." (*Id*.).

69. Cannon described these comments as hurtful and constant.

70. Cannon described having anxiety and emotional damage from this harassment.

71. She described being injured because Defendant "shared [her] private information with [other] employees that didn't need to know [she] had FMLA". (*Id*. at 147).

72. Defendant terminated Cannon on or about August 2, 2024.

**C. Radcliff**

73. Radcliff had approved FMLA for herself based upon her diagnosis of fibromyalgia, as well as approved FMLA for her elderly mother. Her FMLA had been approved as early as 2017.

74. Radcliff reported that she was terminated by Blue Sky allegedly due to attendance points.

75. Radcliff questioned how she could have accumulated enough attendance points to warrant termination and was advised by Jennifer Steves, one of Blue Sky's HR personnel, that Donna Muir, another one of Blue Sky's HR personnel, without authorization or prior notice to Radcliff, went through and picked days in which Radcliff had used her authorized FMLA and instead marked Radcliff as unexcused absent – causing her to incur erroneous discipline attendance points.

76. Specifically, Ms. Muir would look at Ms. Radcliff's schedule and pick days in which Ms. Muir thought Radcliff "didn't need FMLA that day."

77. When Radcliff requested backup information supporting these discipline attendance points, Blue Sky refused to provide the information. Moreover, when looking at her Dayforce account, Radcliff found no instances of attendance points at the time of her termination.

78. Radcliff reports that she was immediately replaced by a much younger, less experienced employee.

79. She reports that since she was terminated, she learned a coworker of similar age and ability status was asked to step down and move to a different area, likely because of his ADA/FMLA status.

**D. Porter**

80. Porter recently applied for FMLA leave due to the anxiety, depression and other conditions she's developed after participating in the *Cannon v. Blue Sky*, 4:25-cv-00013-TWP-KMB litigation.

81. She reports that she is being targeted by her managers and supervisors in retaliation for her participating in the *Cannon v. Blue Sky*, 4:25-cv-00013 litigation.

82. Specifically, she reports that two of her managers—who were previously lifelong friends—have blocked her on social media and iced her out in the workplace.

83. She reports that this incident happened within 2 weeks after her deposition in the *Cannon v. Blue Sky*, 4:25-cv-00013 litigation which occurred in March 2026.

84. She believes these retaliatory actions are directly related to testifying about the Defendant's poor compliance with FMLA, Title VII and the ADEA during her deposition, as well as her own need for leave benefits now.

85. Porter reports that as recent as March 2026, Blue Sky now requires employees alert not only HR and their managers of their disabilities/FMLA entitlement, but that they also must report FMLA absences to Security.

86. Porter reports that Security is not in her chain of command.

87. Security has no governing authority over her job.

88. Yet, she must call in and inform them on every shift when she requires the use of Intermittent FMLA for no other reason than to embarrass and humiliate her, and other similarly situated.

**E. Scalf**

89. Scalf reports being subject to ongoing harassment and mistreatment because of her disability and FMLA entitlement.

90. As a Dealer she was subject to pre-shift meetings before taking the casino floor.

91. On days she would report to work and attend these meetings, she reports that her supervisors and coworkers often made comments to her like "Oh, you decided to show up today" "oh are you sure you want to work today?" "oh wow, you didn't call in today?" and the like.

92. Why anyone besides HR or her direct managers knew Scalf was entitled to FMLA leave is unknown.

93. Scalf believes that HR and her supervisors purposefully disclosed her FMLA/ADA status to humiliate her. It worked.

94. Scalf reports that she was subject to this harassment and derogatory comments about her disabilities and FMLA status for years.

**F. Corroborating Testimony**

95. Other Blue Sky employees corroborate this harassment.

96. Multiple employees reported in their depositions for *Cannon v. Blue Sky*, 4:-25-cv-00013 that Scalf, Radcliff, and Cannon were the subject of numerous jokes during work hours and in front of public patrons.

97. One former employee testified that she was often told by management that her direct supervisor—Radcliff—was off due to FMLA on numerous occassions.

98. That employee testified that her supervisors often made comments to her and other employees that Radcliff "called off on FMLA again" and insinuating that Radcliff's leave was both inconvenient and illegitimate.

99. One casino employee reported that the supervisors would comment about how Scalf and Cannon often called in, as discussed above, and the ongoing joke was called "FMLA" which stood for "F*** Melissa Leaves Again".

100. Cannon testified that supervisors "like to make fun of dealers, and they like to make fun of people who are on FMLA" (Cannon Dep. p. 42).

101. Cannon testified that one supervisor commented on her god-son's use of FMLA saying "Must be nice to have an FMLA" and that these kind of comments "comes off very hurtful" especially when other employees don't know of another's FMLA entitlement (Cannon Dep., p. 44).

102. Cannon reports that supervisors are "out there just telling everybody" that certain employees have FMLA entitlements. (Cannon Dep. p. 44).

103. One current employee reports that the harassment has not stopped.

104. As recent as December 2025, Blue Sky's casino managers **<u>publicly post</u>** schedules with "call out" sections indicating that certain employees need time off for FMLA leave.

105. Porter testified that she recalled hearing the "F*** Melissa Leaves Again" joke on more than one occasion.

**FACTS RELATING TO DAMAGES**

106. All of the Plaintiffs report that Defendant's continued, unmitigated misconduct have caused them significant damage.

107. Cannon reports that she incurred emotional distress both from the harassment due to her disability and FMLA status but also because of her termination.

108. Cannon reported that being unlawfully terminated by Defendant felt like she was going through a divorce.

109. Her economic damages are great.

110. Cannon was forced to apply for food stamps and other governmental benefits after Defendant unlawfully terminated her.

111. She and her partner—Mr. Rollie Cannon—have had to list their home for sale because they can no longer afford to live there.

112. They both exhausted all of the savings and retirement assets they held in an attempt to make ends meet, to no avail.

113. Jones reports that he incurs significant emotional and financial distress.

114. He has applied for extended disability due to the stress, anxiety, and panic being involved in this litigation as well as the *Cannon v. Blue Sky*, 4:25-cv-00013 litigation caused him.

115. Porter recently qualified for intermittent FMLA due to the emotional distress and retaliation she faces at the casino.

116. Scalf has not been able to find full-time work since Defendant illegally terminated her.

117. She currently works part-time and is having difficulty making ends meet.

118. She reports that it took her months to recover from the emotional toll her unlawful termination caused.

119. She began working approximately one month ago, despite looking for full time employment.

120. Radcliff has not worked since her unlawful termination.

121. She reports that her health has significantly declined due to the stress and mental strain working under the toxic environment that Defendant created in the workplace and her subject unlawful termination.

## ADMINISTRATIVE EXHAUSTION

122. Jones filed a detailed Charge of Discrimination with the Indiana Civil Rights Commission on November 19, 2025. The ICRC transferred the charge for administration with the EEOC soon after.

123. Jones alleges that Defendant discriminated against him on the basis of age, disability, and retaliation after he suffered years of harassment, and disparate treatment due to his age and disability.

124. Specifically, he points to the fact that he believes he is "no longer valuable" to the Defendant because of his disability and FMLA status and that he and other older/disabled workers, like him, are constantly harassed by coworkers, supervisors, and managers for needing protected time off due to age-related medical conditions. *Id.*

125. Jones expressly brought his claims on both a collective and class basis.

126. The EEOC closed its investigation into Jones's claim on January 29, 2026, and issued a Right to Sue on the same date.

## CLASS ACTION ALLEGATIONS

127. Plaintiffs' bring their first claim arising out of Defendant's discrimination for reporting Defendant's poor compliance with FMLA leave, pursuant to 29 U.S.C. § 2615(b) and Fed. R. Civ. P. R. 23, on behalf of themselves and the following action class:

> **COUNT I – FMLA Retaliation**
>
> All persons employed by Defendant who complained about Defendant's failure to comply with the FMLA in any respect and who suffered an adverse actions including but not limited to: harassment, subject to unkind actions in the workplace, disciplined, reprimanded, demoted, transferred, laid off, forced to take leave, and/or terminated, between 2023 and present.

128. At present, the relevant period includes the three-year period prior to the filing of this Class Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

129. Plaintiffs' bring their second claim arising out of Defendant's discrimination for their use of FMLA leave, pursuant to 29 U.S.C. § 216(a) and Fed. R. Civ. P. R. 23, on behalf of themselves and the following action class:

> **COUNT II – FMLA Discrimination**
>
> All persons employed by Defendant who applied for and were granted FMLA leave (continuous or intermittent) and who experienced adverse actions including but not limited to: harassment, subject to unkind actions in the

> workplace, disciplined, reprimanded, demoted, transferred, laid off, forced to take leave, and/or terminated, between 2023 and present.

130. At present, the relevant period includes the three-year period prior to the filing of this Class Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

131. Plaintiffs' bring their third claim arising out of Defendant's disclosure of their use of FMLA leave, pursuant to 29 U.S.C. § 216(a) and Fed. R. Civ. P. R. 23, on behalf of themselves and the following action class:

> **COUNT III – FMLA Discrimination**
>
> All persons employed by Defendant who applied for FMLA leave (continuous or intermittent) and whose application status was shared outside of management and/or HR between 2023 and present.

132. At present, the relevant period includes the three-year period prior to the filing of this Class Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

## **COUNT I – FMLA RETALIATION**

126. As discussed above, Plaintiffs were all "employees" as defined by the FMLA.

127. As discussed above, Defendant is an "employer" as defined by the FMLA.

128. Defendant targeted Plaintiffs for adverse treatment because of their legal use of FMLA benefits.

129. Specifically, Jones, Cannon, Scalf, and Radcliff were all subject to harassment, adverse employment actions including termination, all related to their use of FMLA leave.

130. Jones was terminated because of his participation in *Cannon v. Blue Sky*, 4:25-cv-0013 and speaking out against Defendant's illegal FMLA processes.

131. Porter has been and continues to be harassed and mistreated for her exercise of FMLA leave.

132. Porter has been and continues to be harassed and mistreated for her participation in *Cannon v. Blue Sky*, 4:25-cv-0013 and speaking out against Defendant's illegal FMLA processes.

133. This misconduct is expressly prohibited by 29 U.S.C. § 2615 (a) and (b).

134. Plaintiffs incurred monetary damage.

135. Defendant's violations of the FMLA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiffs and similarly situated employees have suffered damages.

WHEREFORE, on Count I of this Class Action Complaint, Jones and Porter, and all similarly situated employees demand judgment against Defendant and pray this Court:

a. Certify the state law claim set forth in Count I above as a class action pursuant to Fed. R. Civ. P. 23;

b. Find and declare that Defendant violated the FMLA;

c. Find the Defendant acted willfully;

d. Award Jones and Porter, and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

e. Order Defendant to reinstate Jones, and other of Defendant's employees to the positions to which they were unlawfully denied or terminated from;

f. Award Jones and Porter and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

g. Award Jones and Porter and all similarly situated employees attorneys' fees and costs; and

h. Award Jones and Porter and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT II – FMLA DISCRIMINATION

136. As discussed above, Plaintiffs were all "employees" as defined by the FMLA.

137. As discussed above, Defendant is an "employer" as defined by the FMLA.

138. Defendant targeted Plaintiffs for adverse treatment because of their legal use of FMLA benefits.

139. Specifically, Jones, Cannon, Scalf, and Radcliff were all subject to harassment, adverse employment actions including termination, all related to their use of FMLA leave.

140. Porter has been and continues to be harassed and mistreated for her exercise of FMLA leave.

141. This misconduct is expressly prohibited by 29 U.S.C. § 2615 (a) and (b).

142. Plaintiffs incurred monetary damage.

143. Jones, Cannon, Scalf, and Radcliff were all terminated.

144. Plaintiffs all incur ongoing mental health damage.

145. Defendant's violations of the FMLA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiffs and similarly situated employees have suffered damages.

WHEREFORE, on Count II of this Class Action Complaint, Plaintiffs, and all similarly situated employees demand judgment against Defendant and pray this Court:

i. Certify the state law claim set forth in Count I above as a class action pursuant to Fed. R. Civ. P. 23;

j. Find and declare that Defendant violated the FMLA;

k. Find the Defendant acted willfully;

l. Award Plaintiffs, and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

m. Order Defendant to reinstate Plaintiffs, and other of Defendant's employees to the positions to which they were unlawfully denied or terminated from;

n. Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

o. Award Plaintiffs and all similarly situated employees attorneys' fees and costs; and

p. Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

**<u>COUNT III – ADA/FMLA DISCLOSURE OF PRIVATE INFORMATION</u>**

146. As discussed above, Plaintiffs were all "employees" as defined by the FMLA and the ADA.

147. As discussed above, Defendant is an "employer" as defined by the FMLA and the ADA.

148. Defendant targeted Plaintiffs for adverse treatment because of their legal use of FMLA benefits and the ADA accommodation process.

149. The Plaintiffs only disclosed their private medical information or need for FMLA or ADA accommodations with their supervisors and managers on a need-to-know basis.

150. Neither HR nor management kept their personal medical information and/or need for FMLA private and confidential.

151. To this day, Defendant posts individuals who need protected time off publicly on posters for other employees to see; requires employees alert Security of their need for protected time off; and publish a list of individuals who have been terminated.

152. Every Plaintiff reports that their personal identifiable medical information was disclosed to their coworkers and sometimes to the public at large, without their knowledge or consent.

153. Defendant violated each Plaintiff's privacy.

154. Defendant had no justifiable cause for its disclosure of Plaintiff's private information.

155. These illegal practices continue today.

156. Defendant's violations of the FMLA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiffs and similarly situated employees have suffered damages.

157. Jones exhausted his ADA administrative remedies.

WHEREFORE, on Count III of this Class Action Complaint, Plaintiffs, and all similarly situated employees demand judgment against Defendant and pray this Court:

q. Certify the FMLA claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

r. Find and declare that Defendant violated the FMLA;

s. Find the Defendant acted willfully;

t. Find the Defendant violated the ADA with regard to Plaintiff Jones.

u. Award Plaintiffs, and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

v. Order Defendant to reinstate Plaintiffs, and other of Defendant's employees to the positions to which they were unlawfully denied or terminated from;

w. Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

x. Award Plaintiffs and all similarly situated employees attorneys' fees and costs; and

y. Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT IV – ADA/FMLA – TOXIC WORK ENVIRONMENT, HARRASSMENT**

158. As discussed above, Plaintiffs were all "employees" as defined by the FMLA and the ADA.

159. As discussed above, Defendant is an "employer" as defined by the FMLA and the ADA.

160. Defendant creates and maintains a toxic work environment in its casino-resort which is hostile to workers entitled to FMLA leave and/or ADA accommodations.

161. Specifically, Jones, Cannon, Scalf, and Radcliff were all subject to harassment, jokes, and humiliation on an ongoing and pervasive basis over the course of years.

162. This hostile and toxic work environment is corroborated by many current employees.

163. Porter reports that these actions continue today.

164. This misconduct is expressly prohibited by 29 U.S.C. § 2615 (a) and (b).

165. Plaintiffs incurred monetary damage.

166. Jones, Cannon, Scalf, and Radcliff were all terminated.

167. Plaintiffs all incur ongoing mental health damage.

168. Defendant's violations of the FMLA have been knowing and willful, and as a direct and proximate cause of Defendant's discrimination, Plaintiffs and similarly situated employees have suffered damages.

169. Jones exhausted his administrative remedies with regard to his claims of toxic work environment under the ADA.

WHEREFORE, on Count IV of this Class Action Complaint, Plaintiffs, and all similarly situated employees demand judgment against Defendant and pray this Court:

z. Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

aa. Find and declare that Defendant violated the FMLA;

bb. Find the Defendant acted willfully;

cc. Find and declare the Defendant violated the ADA with regard to Plaintiff Jones.

dd. Award Plaintiffs, and all similarly situated employees compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

ee. Order Defendant to reinstate Plaintiffs, and other of Defendant's employees to the positions to which they were unlawfully denied or terminated from;

ff. Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

gg. Award Plaintiffs and all similarly situated employees attorneys' fees and costs; and

hh. Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT V – ADA/ICRL DISCRIMINATION AND RETALIATION**

170. As discussed above, Jones was an "employee" as defined by the ADA and the Indiana Civil Rights Law ("ICRL").

171. As discussed above, Defendant is an "employer" as defined by the ADA and the ICRL.

172. Jones brought a Charge of Discrimination against Defendant alleging pervasive ADA and ICRL discrimination.

173. Jones exhausted his administrative remedies.

174. Non-disabled individuals were objectively treated more favorably than Jones. These employees are not subject to increased scrutiny or humiliation like he has been during his employment with Blue Sky.

175. Blue Sky retaliated against Jones for reporting Mike Miller's mistreatment of him to HR.

176. Blue Sky failed to engage in the interactive process with him.

177. Blue Sky's treatment of Jones raises an inference of disparate treatment discrimination as well as retaliation.

WHEREFORE, on Count V of this Class Action Complaint, Jones prays this Court:

ii. Find and declare that Defendant violated the ADA and the ICRL;

jj. Find the Defendant acted willfully;

kk. Award Jones compensatory damages, including back pay and front pay, in an amount according to proof, as well as punitive damages;

ll. Order Defendant to reinstate Jones to the positions to which he was unlawfully terminated from;

mm. Award Jones pre-judgment and post-judgment interest as provided by law;

nn. Award Jones attorneys' fees and costs; and

oo. Award Jones such other relief as the Court deems fair and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 25, 2026.

Respectfully submitted,
BRAD JONES, MELISSA CANNON, DARLENE PORTER, PATRICIA "SHELLY" SCALF, DESIREE RADCLIFF,



ONE OF PLAINTIFFS' ATTORNEYS

Kevin K. McCormick
SDHMR Law Group LLP
215 South 10th Street
Noblesville, IN 46060
317.550.5339
kevin@sdhmrlaw.com
Indiana Atty. No. 38019-45
Illinois Atty. No. 6286831

Julia M. Keenan (*pro hac vice*)
Jeremy N. Spitzer (*pro hac vice*)
Spitzer Law P.C.
1585 N. Milwaukee Ave., Ste. 114
Libertyville, IL 60048
(224) 456-5635
julia@spitzerlawpc.com
jeremy@spitzerlawpc.com
Keenan –Ill. Atty. No. –6336156
Spitzer –Ill. Atty. No. 6300931